IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID M. PETROU,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CA No. 06-2159 (GK)** |
| | ) |
| | ) |
| **CARROLLTON BANK, et al**. | ) |
| | ) |
| Defendants. | ) |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff David M. Petrou hereby moves, pursuant to Rule 15(a), Fed. R. Civ. P., for leave to file the attached proposed Amended Complaint.  The proposed amendments are minor, and relate principally to plaintiff's seventh and eighth causes of action, which defendant Carrollton Bank has moved to dismiss.  Ordinarily, because a motion to dismiss is not deemed a "responsive pleading" under Rule 15, plaintiff would be entitled to amend once as of right.  In this case, however, Carrollton Bank has also answered the original Complaint as filed, including the allegations of Counts VII and VIII. For that reason, plaintiff moves the Court for leave to file the Amended Complaint lodged herewith.  No other named defendant has filed a responsive pleading, or even an appearance, to this date.

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff has brought this action in large part to prevent defendant Carrollton Bank from foreclosing on his residence in the District of Columbia without providing a full accounting of assets properly attributable to Eisner Petrou & Associates ("EPA") that the Bank has already

seized either directly from EPA or indirectly from its owner and parent company, Eisner Communications ("EC"). EPA and EC both ceased active operations on or about November 9, 2006, but neither has filed for bankruptcy protection. Because the affairs of EPA are apparently not currently under any active management, it is impossible to know whether all or part of the Bank's demands for payment have been or could be satisfied by EPA.

Petrou also seeks contribution from Steven Eisner, a co-guarantor, and contract and other damages from EPA, EC, Steven and Sara Eisner, and from Carrollton Bank itself. Petrou's claims against Carrolton Bank also arise from the Bank's negligence and mismanagement of its loans to EPA and EC, which have led the Bank to call on the outdated and lapsed personal guarantee of a former EPA President who has had no role in EPA's affairs since the summer of 2004.

Rule 15(a) of the Federal Rules of Civil Procedure provides that, "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." "Otherwise, a party may amend a pleading only by leave of court; . . . and leave shall be freely given when justice so requires." In the instant case, to this date, only one of five defendants has filed a responsive pleading. That defendant, Carrollton Bank, has also moved to dismiss Counts VII and VIII of the Complaint.

Although Plaintiff Petrou has also filed today an Opposition to Carrollton Bank's Motion To Dismiss, Petrou seeks to amend his Complaint at this early stage of the proceedings to clarify details of his causes of action and to address certain formal omissions in pleading, particularly with respect to his Seventh Cause of Action seeking preliminary and permanent injunctive relief against Carrolton Bank. Plaintiff has sought this relief to prevent Carrollton Bank from

2

foreclosing on plaintiff's home until receipt of a final accounting and during the pendency of a determination whether Carrollton Bank has already gained possession of assets of Eisner Petrou & Associates sufficient to satisfy in full or in part plaintiff's personal guarantee of an extension of credit by Carrollton Bank to Eisner Petrou & Associates.

In its Motion To Dismiss, Carrollton Bank has argued, for example, that Petrou's Complaint failed to support his allegation of irreparable harm because it alleged only money damages. This argument badly misstates Petrou's Complaint, which clearly alleges irreparable harm to Petrou if Carrollton Bank forecloses on his home in the District of Columbia, and he is forced to lose his residence. Complaint at ¶ 92. Carrollton Bank also argued that Petrou has failed to allege other elements of the relief sought, such as his likelihood of success on the merits, the lack of injury to others, and the public interest. Although Petrou believes the facts alleged in the original complaint adequately support these requirements for injunctive relief, Petrou has decided to move for leave to amend to clarify these points. Other minor amendments also appear throughout the proposed Amended Complaint to better conform to facts known at this date.

Courts in this Circuit have invariably held that, under the liberal standard of Rule 15(a), "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or futility of amendment." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation omitted); see *Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083-84 (D.C. Cir. 1998) (emphasizing Rule 15(a)'s liberal standard); *Bell v. Exec. Comm. Of United Food & Comm. Workers Pension Plan*, 191 F. Supp. 2d 10, 13

(D.D.C. 2002)(same).

Here, there is no basis for believing that the proposed amended complaint is being filed for any of the enumerated prohibited purposes--undue delay, bad faith, because of a dilatory motive, or as a result of a repeated failure to cure previous defects. To the contrary, the amendment is sought at the very outset of the litigation, and before four out of five of the defendants have even answered.

CONCLUSION

For all the reasons herein stated, the Court should grant plaintiff's Motion for Leave To File his Amended Complaint, attached hereto.

CERTIFICATION OF COUNSEL

Pursuant to LCvR 7(m), undersigned counsel spoke by telephone with Ms. Janet Eveland, Esq., counsel for Carrollton Bank, to seek consent for this motion, but consent was withheld.

Respectfully submitted,

/s/_____
Paul G. Gaston, DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW, Suite 750
Washington, DC 20036
(202) 296-5856
Fax: (202) 296-4154
*Attorney for Plaintiff*

February 12, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 12th day of February, 2007, the foregoing Motion for Leave to

Amend, along with the proposed Amended Complaint, were served by first class mail, postage

prepaid, on the following:


Eisner Petrou & Associates
509 South Exeter Street
Baltimore, MD 21202

and

Andrew M. Dansicker, Esq.
Schulman, Treem, Kaminkow,
Gilden & Ravenell, P.A.
Suite 1800, The World Trade Center
401 East Pratt Street
Baltimore, MD 21202
(counsel for Steven and Sara Eisner and Eisner Communications)




__/s/_____
Paul G. Gaston

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID M. PETROU,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CA No. 06-2159 (GK)** |
| | ) |
| | ) |
| **CARROLLTON BANK, et al**. | ) |
| | ) |
| Defendants. | ) |

<u>ORDER</u>

Having received and reviewed Plaintiff Petrou's Motion For Leave To File Amended

Complaint, and the accompanying Memoranda of Points and Authorities, and it appearing that

Plaintiff's  motion is well-founded, it is hereby

ORDERED,

that Plaintiff's Motion for Leave To File Amended Complaint is GRANTED, and the

Amended Complaint previously lodged with the Court is deemed filed as of the date of this

Order.

SO ORDERED this __ day of _____, 2007.

_____
United  States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID M. PETROU,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CA No. 06-2159 (GK)** |
| | ) |
| | ) |
| **CARROLLTON BANK, et al**. | ) |
| | ) |
| Defendants. | ) |

**AMENDED COMPLAINT
FOR DAMAGES AND DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff David M. Petrou ("Petrou") brings this action, through his undersigned

attorneys, against defendants Carrollton Bank, Eisner Communications ("EC"), Eisner Petrou &

Associates ("EPA"), Steven C. Eisner, and Sara Eisner, seeking recovery of contract damages,

contribution, and an accounting from certain defendants and also declaratory, injunctive, and

equitable relief against Carrollton Bank ("the Bank"). The case involves the wrongful diversion

of revenues from EPA to EC by the Eisner defendants, in breach of contract obligations owed to

Petrou, as well as in breach of Steven Eisner's fiduciary duties owed to EPA and the stockholders

of EPA, including Petrou, and the negligence and wrongdoing of the Bank. The Bank failed

properly to document, administer or monitor its loans to both EC and EPA, thus prejudicing the

personal guarantee of plaintiff Petrou, and also failed to follow federal and District of Columbia

law and proper procedures with respect to a home equity loan extended to Petrou and with

respect to a deed of trust on Petrou's residence in the District of Columbia. Without relief from

the Court, plaintiff Petrou would be left in the unfortunate position of being solely liable for the

negligence, breach of contract, and breach of fiduciary duty of the Eisner defendants, and the negligence and failures of the Bank with respect to its $350,000 loan to EPA and a home mortgage on Petrou's residence. Plaintiff Petrou brings this action to recover damages from the Eisner defendants and to prevent Carrollton Bank from pursuing a double recovery of loan proceeds which have improperly been diverted from EPA to EC, where they have already been seized by the Bank along with other EC assets.

In support of his Complaint, plaintiff alleges as follows:

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 (a). Plaintiff Petrou is a citizen and resident of the District of Columbia and all defendants are citizens and residents of Maryland, and the amount in controversy exceeds $75,000. This Court also has subject matter jurisdiction under 15 U.S.C. § 1640, the Truth in Lending Act, 15 U.S.C. § 1601 et seq., the Homeowners Equity and Protection Act, 15 U.S.C. § 1602 et seq., and under principles of pendent, supplemental, and ancillary jurisdiction, the District of Columbia Mortgage Lender & Banker Act, D.C. Code Ann. § 26-1101 et seq. The Court also has jurisdiction under 28 U.S.C. § 2201, the Declaratory Judgment Act.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (a) and (b). A substantial part of the events or omissions giving rise to the claims herein occurred in the District of Columbia, including the signing by Petrou of all relevant loan documents. The property which is the subject of the challenged Home Equity Line of Credit and Deed of Trust is located in the District of Columbia. All defendants, including the Bank, have conducted business in and are subject to personal jurisdiction in the District of Columbia. The corporate defendants therefore reside in and may be found in the District of Columbia.

## THE PARTIES

3.  Plaintiff David M. Petrou is the former President, Chief Operating Officer, and a former member of the Board of Directors of Eisner Petrou & Associates ("EPA"). He was and remains a 50% stockholder of EPA, although his voting rights associated with his stock holdings were transferred to Steven Eisner on or about August 31, 2004. Since that date, he has been precluded from having any active role in the affairs of EPA. He is and was at all relevant times a resident of the District of Columbia. He resides at 2810 R Street, NW, Washington DC 20007. This residence is a single-family house which is the subject of a Deed of Trust held by defendant Carrollton Bank.

4.  Defendant Eisner Petrou & Associates is a corporation incorporated in the State of Maryland, with its principal place of business  at 509 South Exeter Street, Baltimore MD 21201. EPA was a public relations firm which formerly maintained an office at 927 Fifteenth Street, NW, Suite 900, Washington, DC 20005.. Until August 31, 2004, Petrou was a member of the Board of Directors of EPA, as well as its president responsible for day-to-day operations. After August 31, 2004, and until July 31, 2005,  EPA continued to maintain a District of Columbia office but actually operated out of the offices of Eisner Communications in Baltimore. On or about August 31, 2004, control of EPA, including control of its day- to-day operations and 100% voting control of all stock of EPA, by agreement, became solely the responsibility of EC and Steve and Sara Eisner, who were officers and directors of EC.

5.  Defendant Eisner Communications ("EC") is a corporation incorporated in the state of Maryland, with its principal place of business at 509 South Exeter Street, Baltimore MD 21201. EC has been conducting business as an advertising agency.  It is wholly owned by Steve Eisner

3

or owned jointly by Steve Eisner and Sara Eisner.  EC has conducted business in the District of

Columbia through its subsidiary EPA and, on information and belief, through its own operations.

6.  Defendant Steven C. Eisner is the Chairman of the Board of Directors of EC.  He is

also the Chairman of the Board of Directors of EPA and has been since August 31, 2004, solely

responsible for its day-to-day operations.  He resides at 207 Longwood Road, Baltimore, MD

21210.  He has conducted business in the District of Columbia through his control and direction

of EPA and EC.

7.  Defendant Sara Eisner is the wife of Steve Eisner and a senior corporate officer of EC.

Together, Steve and Sara Eisner effectively and completely controlled the operations of EC, and,

since August 2004, the operations of EPA.   On information and belief, she resides with her

husband at 207 Longwood Road, Baltimore, MD 21210.  Through her joint control of EC and

EPA with her husband, she has conducted business in the District of Columbia.

8.  Defendant Carrollton Bank is a state chartered bank with its headquarters in

Baltimore, Maryland at 344 North Charles Street, Suite 300, Baltimore, MD.  It is subject to

regulation and oversight by the FDIC and the State of Maryland, Division of Financial

Regulation.  Carrollton Bank holds a Deed of Trust on plaintiff Petrou's residence in the District

of Columbia, and, on information and belief, conducts business in the District of Columbia in

other ways as well.

## FACTS

9. For eighteen years, Petrou served as a director, President, and Chief Operating Officer

of Eisner Petrou & Associates and managed its day to day affairs.  He was and remains a 50

percent equity owner of EPA, along with Eisner Communications, although his shares have had

no voting rights since August 31, 2004.

<u>Carrollton Bank Extends Credit to EPA on October 31, 2002</u>

10.  During Petrou's tenure, EPA entered into a number of loan agreements with

Carrollton Bank.

11.  Generally, these agreements were for the term of one year only, and were renewed

each year.

12.  The last such agreement of which Petrou has any record was a "Business Loan

Agreement" of October 31, 2002, with a stated maturity date of October 31, 2003.  That

agreement provided, under a provision with the heading "TERM," as follows: "This Agreement

shall be effective as of October 31, 2002, and shall continue in full force and effect until such

time as all of Borrower's Loans in favor of Lender have been paid in full...or until October 31,

2003."

13.  On information and belief that Business Loan Agreement was never renewed or

extended beyond its expiration date of October 31, 2003, or alternatively, beyond December 31,

2003.  On information and belief, two "Change in Terms" agreements were subsequently

executed on or about October 28, 2003, and December 31, 2003.  The first of these indicated that

the "change in terms" was as follows: "Maturity Date Extended to December 31, 2003."  The

second indicated that the change in terms was as follows: "Effective date of the Change in Terms

Agreement the principal balance is payable on demand."

14.  At the time EPA entered into that Business Loan Agreement with Carrollton Bank, it

also executed a Promissory Note, also with a maturity date of 10/31/2003, promising to pay

$350,000 to the bank.  The Note provided for a variable interest rate based on Lender's Prime

rate, with an initial interest rate of 5.25 percent.  On information and belief, that Note was not

paid or called on its maturity date, and never renewed or extended.

15.  Carrollton Bank conditioned the extension of credit to EPA on receiving personal

guarantees from Petrou and Steve Eisner.  It received such personal guarantees from both men.

Carrollton Bank also requested, and about six weeks later received, a fully executed Deed of

Trust styled as a "Home Equity Credit Line Deed of Trust" on Petrou's residence at 2810 R

Street, NW, in the District of Columbia.  That Deed of Trust, by its express terms, provided that

it was given "to secure ... performance of a guaranty from grantor to lender, and does not directly

secure obligations due lender under the note...."

16.  Petrou and Eisner executed the guarantees and certain related subordination

agreements on October 31, 2002.  Both of the "Commercial Security Agreements" and both of

the "Subordination Agreements" executed that day expressly provided that they had a "maturity

date" of  "10-31-2003."

17.  About six weeks later, Petrou executed a "Deed of Trust" purporting to grant

Carrollton Bank's designated Trustees certain interests in his real property at 2810 R Street, for

the benefit of Carrollton Bank as the "Lender" or "Beneficiary."  This deed of trust was signed

and notarized on December 11, 2002.

18.  Petrou was never given a financing statement with respect to this mortgage on his

home in the District of Columbia.  He was never given any kind of documentation at least 72

hours prior to settlement on this financing, he never waived his right to such advance

documentation, and he was never given a settlement statement.

19.  Petrou was never advised of any rights of rescission he had with respect to this

6

mortgage on his home in the District of Columbia.

20.  Petrou was never given a disclosure statement advising him of the true interest rate, or "A.P.R." with respect to this mortgage on his home in the District of Columbia.

21.  Petrou was never advised whether Carrollton Bank was licensed to issue mortgage financings in the District of Columbia.  On information and belief, Carrollton Bank did not have a current and valid license to issue such a mortgage financing under District of Columbia law.

22.  Petrou's signature on the purported "Deed of Trust" was attested to by a notary licensed and commissioned in the State of Maryland, not the District of Columbia.

23.  On information and belief, the Deed of Trust was nonetheless subsequently recorded by the District of Columbia Recorder of Deeds.

### Petrou Retires from EPA Under Terms Requiring EPA to Pay Down Carrollton Bank Loan from Cash Flow

24.  On August 31, 2004, Petrou entered into an "Operating and Retirement Agreement" with EPA.

25.  Pursuant to that Agreement, Petrou retired from any active role in EPA's affairs as of that date, gave EC an option to buy all of his shares of EPA stock, and assigned complete voting control of such shares to Steve Eisner pending execution of such option right and transfer of such shares.  EC still retains such option right and Steve Eisner retains complete voting control on all shares of EPA's stock previously owned by Petrou.  EC and Steve Eisner hold complete voting control of all EPA shares, and have done so since August 31, 2004.

26.  Pursuant to that Agreement, EPA continued to maintain an office in the District of Columbia, and, as part of his retirement and severance arrangement, Petrou retained the formal

title of President and continued to draw a salary for an additional twelve months, or through the end of July 2005.

27.  During the period from the date of his retirement on August 31, 2004, through July 2005, Petrou played no role in EPA's business affairs and had no role in directing them.  During that same time, and at all relevant times thereafter, Petrou had no access to accurate and complete information concerning EPA's business affairs and financial condition.

28.  After July 2005, all relations between EPA and Petrou, even those minimal ones involved in his retirement and severance arrangement, were completely terminated.

29.  Pursuant to section 1.08 of that Agreement, EPA undertook to pay down the Carrollton Bank loan: "Commencing on the date of this Agreement and continuing until completion of the interim period, all 'Excess Cash Flow' of EPA shall be applied as quickly as possible to repay the Carrollton Bank indebtedness."  This provision was intended by both parties to relieve Petrou of any surviving obligations of his personal guarantee of the Carrollton Bank indebtedness.  (See also Section 1.09 of the Agreement stating that the expectation of the parties was that the indebtedness would be paid in full and Petrou relieved of any further obligations within 48 months.)

30.  Under the Agreement, "Excess Cash Flow" was defined to mean the difference between cash flow generated from operations and certain expenses due and payable within one year or less, such as salaries, but not general overhead or rent payments to EC.

31.  On information and belief, EPA experienced some "Excess Cash Flow" during the period from August 31, 2004, through July 31, 2005, and substantial "Excess Cash Flow" in the period after July 31, 2005 and before November 9, 2006.

8

### EPA Fails To Make Required Payments

32.  However, on information and belief, either EPA did not apply that Excess Cash Flow to repay the Carrollton Bank indebtedness at all, or EPA did not apply it to the full extent it was contractually obligated to apply it to repay that indebtedness.

33.  Moreover, Steve Eisner and EC, on information and belief, limited revenues properly attributable to EPA but which were initially collected by EC and should have been passed through to EPA but were not.  Thus, Steve Eisner and EC improperly and artificially limited the Excess Cash Flow of EPA that it was contractually obligated to use to pay down the Carrollton Bank indebtedness.

34.  Despite Petrou's demands, EC also failed to make the required accounting under Section 1.12 of  the Agreement  necessary to determine the amount of such Excess Cash Flow.

35.  EC also failed to properly account for all public relations revenue attributable to business conducted by either EPA or EC in accordance with Section 5.03 of the Agreement, maintaining the exclusive right of EPA to perform all public relations activities of EC or EPA, and therefore deprived EPA of such revenue for purposes of the proper accounting of Excess Cash Flow as required.

### Steve and Sara Eisner Operated EC to the Detriment of EPA

36.  Steve Eisner's primary interest was in maintaining the viability and profitability of EC, a much larger company than EPA.  Steve Eisner was a Chief Executive Officer and the Chairman of the Board of Directors of EC.  He also held the same positions, after Petrou's retirement, with EPA. Sara Eisner was a senior officer and director of EC who also shared *de facto* control over EPA with her husband.

9

37.  Steve and Sara Eisner owed fiduciary duties to EPA no less than they did to EC.

38.  However, Steve and Sara Eisner favored EC over EPA because EC was a larger company and the vast majority of their family's wealth was tied up in EC, not EPA.

39.  In or about June 2004, the Board of Directors of EPA determined by resolution of the Board of Directors at a special meeting of the Board that–even up to that time--Steve Eisner had breached his fiduciary duty to EPA by withholding funds of EPA that were owed to EPA by EC for services performed by EPA for the benefit of clients of EC and billed by EC and collected by EC.  Once Steve and Sara Eisner gained complete control of the Board of Directors of EPA and gained complete control of all voting stock of EPA a few months later on or about August 31, 2004, they resumed such actions to the detriment of EPA and plaintiff  Petrou and for the improper benefit of Defendants Steve Eisner, Sara Eisner and EC.

40.  Both Steve and Sara Eisner operated EC and EPA primarily for their own interests, drew from corporate expense accounts for their own personal expenses, commingled personal and corporate funds, and otherwise failed to follow corporate formalities separating EPA from EC and separating their own personal interests from those of the two corporations.

### EC and EPA Cease Operations and the Bank Seizes EC Assets, Including Those Properly Attributable to EPA

41.  EC unexpectedly and suddenly ceased operations on November 9, 2006, leaving many unpaid debts and turning its fifty (50) employees out into the street.  EPA also ceased operations at the same time, for unexplained reasons.  On information and belief, EPA was and could have continued as a viable and sustainable separate enterprise.

42.  Carrollton Bank had extended loans pursuant to a line of credit to EC of

10

approximately $5 million.

43.  On information and belief, and based on news reports, on or about November 9, 2006, Carrollton Bank declared those loans to EC in default and acted to seize control of all collateral and security interests at EC, including accounts receivable.

44.  On information and belief, the assets of EC seized by the Bank included assets of EPA that had been improperly diverted to EC.

45.  On information and belief, these assets already seized by the Bank included, but were not limited to, the following: revenues received by EC on behalf of or on account of EPA, and due and owing to EPA, but which were improperly withheld from EPA; revenues, profits, credits to, and accounts receivable of EPA which related to services performed by EPA either directly for EPA clients or services performed by EPA on behalf of EC clients for which EPA billed EC for such services and  EC billed its clients for such services that were improperly detained and withheld by EC rather than being paid to EPA; and tangible assets of EPA, including office equipment, furniture, and related items which were improperly deemed to be property of EC but were in fact property of EPA.

46.  At all times, Carrollton Bank, in conjunction with and with the active compliance of EC and the Eisner defendants, acted to maximize its recovery of collateral and security on its $5 million line of credit to EC, while prejudicing and minimizing its recovery on the $350,000 line of credit to EPA, a wholly owned subsidiary of EC.  On November 20, 2006, Carrollton Bank through its attorneys transmitted a letter to EPA demanding payment in full of EPA's outstanding indebtedness to the Bank on or before December 29, 2006.  That letter made no mention of assets already seized from EC that were EPA property.  In that letter, copies of which were transmitted

11

to both plaintiff and Steve Eisner personally at their residence addresses, the bank declared that

the loan would be in default if not paid by that date, and implied that it would then seek recourse

against the personal guarantees of either or both.

47.  By maximizing the assets of EC and minimizing the assets of EPA available to

satisfy the two different outstanding lines of credit to EC and to EPA, the Bank and the Eisner

defendants colluded and conspired to damage the interests of plaintiff Petrou, who is a personal

guarantor of the EPA line of credit, but not the EC line of credit.

WHEREFORE, plaintiff Petrou brings the following causes of action:

### I. DEMAND FOR AN ACCOUNTING
### from EPA, EC, and Carrollton Bank

48.  Plaintiff repeats and incorporates by reference the allegations of paragraphs one

through 47 as though fully set forth herein.

49.  Plaintiff and plaintiff's duly authorized representatives demanded to receive a full

financial accounting of EPA's business as well as an accounting of all public relations services

activities that may have been performed by EC rather than by EPA and for which any revenues

associated with such public relations activities should also be credited to the benefit of EPA

several times during the "interim period" as defined in the Operating and Retirement Agreement

of August 31, 2004.  Plaintiff had a right to such an accounting under the Agreement and because

he remained a 50 percent shareholder.

50.  EPA and EPA's representatives did not provide any audited, complete, or accurate

accounting of the kind demanded;

51.  EC and the Bank have colluded and conspired to maximize the recovery to EC on its

12

$5 million line of credit to EC while minimizing any recovery from EPA on the Bank's $350,000

line of credit to it by improperly moving assets, revenues, credits, and liabilities between EC and

EPA.

52.  It is impossible to sort out the precise extent of such activity without a full

accounting from EC as well as EPA.

53.  It is impossible to sort out the precise extent of the prejudice to EPA and to plaintiff

without an accounting from the Bank of the assets of EC already seized and credited against EC's

$5 million indebtedness.

54.  Therefore, plaintiff has a right to and demands a full accounting from EPA, EC, and

the Bank of these matters.

## II. BREACH OF CONTRACT
### Against EPA and Steven Eisner

55.  Plaintiff repeats and incorporates by reference the allegations of paragraphs one

through 54 as though fully set forth herein.

56.  Articles 1.08, 1.09, 1.123 and 5.5 of the Operating and Retirement Agreement of

August 31, 2004, were material terms of the contract entered into on that day by plaintiff and by

EPA.

57.  EPA, under the direction of Steven Eisner, failed to make the payments required

under Articles 1.08 and 1.09  to pay down EPA's $350,000 line of credit owed to the Bank.

58.  EPA therefore breached material terms of the contract and became liable for contract

damages.

59.  Steven Eisner directed and caused the breach, in violation of his fiduciary duties to

13

EPA.

60.  Steven Eisner operated EPA solely to benefit himself and to benefit EC, and failed to follow proper corporate formalities separating his interests in EPA and EC and separating the operating funds and assets of EPA and EC, and failed to properly account for revenues associated with public relations activities performed by EC and EPA.

61.  EPA and Steven Eisner are therefore jointly and severally liable for breach of contract.

62.  As a result of the breach of contract described above, Petrou has suffered direct and consequential damages in the amount of at least $350,000, plus attorneys' and other fees and expenses.

### III. CONTRIBUTION
### Against Steven Eisner

63.   Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 62 as though fully set forth herein.

64.  Defendant Steven Eisner executed a personal guarantee against the $350,000 line of credit extended to EPA by Carrollton Bank.

65.  On information and belief, Eisner has failed to pay any amounts that are already due and owing or about to become due and owing under that guarantee.

66.  To the extent that Petrou is or may become liable to the Bank on his personal guarantee of that line of credit, he is entitled under applicable law to contribution from Steven Eisner for Eisner's share.

67.  Accordingly Petrou demands contribution from Eisner in the amount of at least

$175,000, plus such other and further amounts as are reasonably shown to be due and owing to the Bank, and/or are attributable to the failure of Eisner to uphold his guarantee.

## IV. CIVIL CONSPIRACY
### Against EPA, EC, Steven Eisner, Sara Eisner, and Carrollton Bank

68. Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 67 as though fully set forth herein.

69. After Petrou left EPA it was controlled and directed by EC, and Steven and Sara Eisner.

70. EC was at all relevant times controlled and directed by Steven and Sara Eisner.

71 EPA, EC, and Steven and Sara Eisner at all relevant times managed the affairs of EC and EPA to favor the allocation of assets, revenues, and credits away from EPA and toward EC, and the allocation of debts, liabilities, and expenses to EPA and away from EC.

72 In doing so, they impermissibly, improperly, and illegally diverted revenues, payments, and profits away from EPA and toward EC, and withheld payments and revenues due and owing to EPA from EC, and thwarted plaintiff Petrou's efforts to obtain an accounting of such activities and profits owing to EPA for purposes of repayment of such Bank debt.

73. Carrollton Bank also aided, abetted, participated in and encouraged this process, at least with respect to assets of EPA that could be used to collateralize the Bank's extensions of credit to both EPA and EC.

74. All defendants agreed and colluded to maximize the assets of EC and to minimize the assets of EC that were available to satisfy the two lines of credit, to the detriment of plaintiff, whose personal guarantee encompassed only the line of credit extended to EPA.

15

75.  All defendants are therefore liable, jointly and severally, for their civil conspiracy, which has damaged plaintiff in the amount of at least $350,000, plus expenses and costs of protecting plaintiff's interests.

## V.  NEGLIGENCE AND BREACH OF FIDUCIARY DUTY
### Against Steven and Sara Eisner

76. Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 75 as though fully set forth herein.

77.  Steven Eisner owed plaintiff at least a duty of ordinary care in discharging his duties as chairman and CEO of EPA after Petrou's departure from active management of EPA. Although Petrou remained a 50 percent shareholder of EPA, he had relinquished all voting control over his shares in accordance with the Agreement upon his good faith belief that Steven Eisner would execute his duties as an officer and director of EPA for the benefit of all shareholders of EPA, not for the benefit only of EC and adverse to the shareholder interests of plaintiff Petrou.   Steve Eisner was also a signatory to the Operating and Retirement Agreement with EPA.  Sara Eisner, jointly with Steve Eisner, exercised *de facto* control over the affairs of both EC and EPA, and therefore also owed plaintiff a duty of ordinary care.

78.  Steven Eisner, as a director of EPA, also owed plaintiff a fiduciary duty for the same reasons described in the paragraph preceding.  Sara Eisner, jointly with Steve Eisner, exercised *de facto* control over the affairs of both EC and EPA, and therefore also owed plaintiff a fiduciary duty.

79.  Steven and Sara Eisner breached both their duty of ordinary care and their fiduciary duty to plaintiff by operating EPA in disregard of EPA's corporate interests and in disregard of

EPA's corporate formalities as a separate entity from EC.

80.  Plaintiff was damaged thereby in an amount to be determined at trial, but not less than $350,000.

## VI.  PIERCING OF THE CORPORATE VEIL
### Against Steven and Sara Eisner

81. Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 80 as though fully set forth herein.

82.  Steven and Sara Eisner ran EC and EPA as though they were not distinct corporate entities.

83.  They improperly diverted funds, withheld funds, and re-allocated assets from one corporate entity to another without consideration of the separate legal status of each entity and the different stockholder ownership of each entity.

84.  They also improperly used corporate funds for personal expenses, commingled personal and corporate funds, and failed to honor corporate formalities separating EC from EPA and separating both corporations from their own interests.

85.  Plaintiff was damaged thereby because, as a result of these activities of Steven and Sara Eisner, less assets and funds of EPA remained available to satisfy EPA's indebtedness to the Bank.

86.  Steven and Sara Eisner are therefore liable, jointly and severally, to Petrou for all debts, obligations, damages, and payments otherwise owed to Petrou, or arising from these causes of action, that would be payable by either EC or EPA.

17

## VII.  PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF
### Against Carrollton Bank

87. Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 86 as though fully set forth herein.

88.  On November 20, 2006, Carrollton Bank through its attorneys transmitted a letter, received by Petrou at his personal residence in the District of Columbia, demanding payment from EPA of $349,730.51.

89.  The Bank implied in that letter that, in the event of default by EPA, it would seek full recourse to other remedies, including demanding payment of the full amount of plaintiff's personal guarantee on the loan and possibly even seeking foreclosure of plaintiff's personal residence in the District of Columbia.  Since that time, a representative of the Bank has confirmed that the Bank is seeking to institute foreclosure proceedings.

90.  The affairs of  EPA have not been properly managed for quite a while, and, on information and belief, are not currently being managed in any active way by anyone.  Moreover, assets and liabilities have not been properly assigned between and among EC and EPA.  The Bank's November 20, 2006, letter fails to recognize the absence of any current active management of EPA and those errors and deficiencies in accounting for EPA assets.

91.  Therefore, without an accounting, it is impossible to know how much of the $349,730.51 demanded in that letter can properly be paid from assets and security of EPA.

92.  Plaintiff would be irreparably harmed if the Bank foreclosed on his personal residence.  It is his only place of residence.  Plaintiff would also be irreparably harmed if the Bank demanded immediate payment of the full amount of his personal guarantee because

18

plaintiff does not have such an amount available for payment or anything close to such an amount.

93.    Until a proper accounting pursuant to plaintiff's First Cause of Action above is received from EPA, EC, and the Bank, moreover, it is impossible to know: (i) how much of the assets properly attributable to EPA have been diverted to EC; (ii) how much of those diverted assets have already been seized and/or made available to the Bank in satisfaction of its $5 million dollar line of credit to EC rather than its $350,000 line of credit to EPA; or even (iii) what assets properly belonging to EPA are actually available to satisfy or reduce EPA's indebtedness.

94.    Until such an accounting is provided, it cannot be reliably determined that Petrou owes anything to the Bank on his personal guaranty.

95.    Plaintiff has a strong probability of success on the merits of his claims against the Bank for civil conspiracy and for negligence, as well as his demand for an accounting.

96.    If the injunctive relief sought is granted, no party will be harmed.  The Bank will retain any lawful rights it may have.

97.    The public interest also favors the relief sought because the public interest is served by allowing plaintiff to remain in his home, and no one is served by ejecting plaintiff from his residence in a foreclosure sale.

98.    Accordingly, in order to avoid irreparable harm, to avoid double recovery by the Bank, and according to principles of equity and fairness, Plaintiff is entitled to and demands a preliminary and permanent injunction against Carrollton Bank (i) enjoining it from demanding payment of all or any part of his personal guarantee of the $350,000 line of credit extended by the Bank to EPA; and (ii) enjoining it from accelerating or demanding payment on its home equity

19

line of credit and deed of trust, or initiating any foreclosure proceedings with respect to that

home equity line of credit and deed of trust, until such time as the three parties named in the First

Cause of Action above provide a full, complete and accurate accounting as demanded, and all

issues related to the diversion of assets from EPA to EC and their subsequent seizure by the Bank

are fully resolved and adjudicated.

### VIII.  DECLARATORY JUDGMENT AND DAMAGES FOR VIOLATION OF FEDERAL AND DISTRICT OF COLUMBIA LENDING STATUTES
#### Against Carrollton Bank

99.  Plaintiff repeats and incorporates by reference the allegations of paragraphs one

through 98 as though fully set forth herein.

100.  Carrollton Bank has demanded payment of EPA and indicated that it would declare

a default if payment was not received in full.  In the same letter the Bank implied it would pursue

other remedies available to it against plaintiff as guarantor.  A representative of Carrollton Bank

has stated that the Bank now seeks to initiate foreclosure proceedings against Petrou's residence.

101.  An actual case or controversy therefore exists.

102.  Carrollton Bank never renewed its Business Loan Agreement of October 31, 2002,

entered into with EPA.

103.  That Agreement expired by its terms on either October 31, 2003 or December 31,

2003.

104.  The Bank never renewed its promissory note of the same date, which had a maturity

date of October 31, 2003.

105.  The Bank never renewed its Commercial Security Agreement or its Subordination

Agreement of the same date, both of which also are designated to have maturity dates of October

31, 2003.

106. The Bank also failed to comply with applicable federal and District of Columbia law in taking a mortgage on plaintiff's residence when it demanded and received a home equity credit line deed of trust on plaintiff's residence.

107. The Bank did not advise plaintiff of his rights of rescission under the applicable home equity credit line.

108. The Bank did not provide loan documentation to Petrou at least 72 hours prior to the time of settlement on the home equity credit line.

109. The Bank did not prepare and present to plaintiff a complete financing or settlement statement related to such home equity credit line.

110. The Bank did not disclose to plaintiff his true "APR."

111. On information and belief, the Bank was not properly licensed with the District of Columbia as a mortgage lender at the time it executed this mortgage.

112. The Bank did not have plaintiff's signature attested to by a District of Columbia Notary Public.

113. The Bank improperly recorded the deed of trust despite the lack of proper notarization.

114. These actions violate provisions of applicable law, including, but not limited to, the District of Columbia Mortgage Lender & Banker Act, D.C. Code Ann. § 26-1101, the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Homeowners Equity and Protection Act, 15 U.S.C. § 1602(a)(a) et seq., and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq.

115.  Plaintiff was damaged by these failures and suffered and continues to suffer losses as result.

116.  For all of the above reasons, plaintiff is entitled to certain damages and costs, including applicable legal fees, for violation of the above statutes; and is also entitled to a Declaratory Judgment that Carrollton Bank does not have, and cannot enforce, a valid personal guarantee against plaintiff, and does not have, and cannot enforce or take any action to foreclose, any home equity credit line deed of trust on his personal residence.

## IX. NEGLIGENCE AND LENDER LIABILITY
### Against Carrollton Bank

117.  Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 116 as though fully set forth herein.

118.  Carrollton Bank owed a duty of care to plaintiff as the personal guarantor of the Bank's loan to EPA.

119.  The Bank breached that duty of care by failing properly to monitor or administer that loan.

120.  The Bank breached that duty of care by failing even to renew the loan when it expired, and failing to demand payment on its promissory note associated with that loan upon its maturity date of the same date.

121.  The Bank also breached its duty of care to plaintiff when it failed to demand a proper accounting or financial statements of EPA in a timely manner, despite notice of problems at its parent company, EC,  and to determine whether EPA's assets were being siphoned off or diverted to EC.

122.  The Bank is therefore liable to Petrou in an amount to be determined at trial, but no less than $350,000.

## X. CREATION OF A CONSTRUCTIVE TRUST
### Against Carrollton Bank

123.  Plaintiff repeats and incorporates by reference the allegations of paragraphs one through 122 as though fully set forth herein.

124.  EC and Steven and Sara Eisner have improperly diverted funds and assets of EPA to EC, and/or have improperly withheld funds and assets of EPA by retaining them in EC and failing to pay or transfer them to EPA.

125.  On information and belief, Carrollton Bank has seized and now controls all assets of EC, including those that properly belong to EPA.

126.  EC as the sole voting shareholder of EPA owed EPA a fiduciary duty to safeguard and hold separate all of EPA's assets from its own.

127.  Carrollton Bank has succeeded to all the duties and obligations of a fiduciary and a trustee with respect to EPA's assets it seized when it took control of EC's assets.

128.  Plaintiff therefore demands the creation of a constructive trust with Carrollton Bank as the trustee for all of EPA's assets improperly diverted to or held by EC that were subsequently seized by Carrollton Bank.

**RELIEF REQUESTED:**

**WHEREFORE**, and for all the reasons stated above, plaintiff demands the relief described above, and summarized as follows:

1.  A full complete, and accurate accounting from EPA, EC, and Carrollton Bank of the

assets and liabilities of EC and EPA and the assets and security of EC already seized by the bank;

2.  Damages for breach of contract from EPA and Steven Eisner in the amount of at least $350,000 plus expenses and costs;

3.  Contribution from Steven Eisner, personally, in the amount of at least $175,000;

4.  Damages for civil conspiracy against all defendants, jointly and severally, in the amount of at least $350,000;

5.  Damages against Steven Eisner, as an officer and director of EPA, in an amount to be determined at trial, but not less than $350,000, for negligence and breach of fiduciary duty;

6.  Damages against Steven and Sara Eisner, each as corporate officers of EC and as individuals,  in an amount to be determined at trial, but not less than $350,000, for any liabilities of EC and EPA for which they may be liable, jointly and severally, on a theory of piercing the corporate veil of EC;

7.  A Preliminary and Permanent Injunction against Carrollton Bank prohibiting it from attempting to enforce any personal guarantee against plaintiff, and prohibiting it from attempting to accelerate or foreclose on its deed of trust on plaintiff's personal residence, until such time as EPA, EC, and the Bank provide the accounting demanded in the First Cause of Action, and all issues and disputes with respect to assets properly allocable to EPA rather than to EC are fully resolved;

8.  Damages in an amount to be determined against Carrollton Bank for its violation of applicable Federal and District of Columbia lending law, and a Declaration that Carrollton Bank has no right to enforce either the personal guarantee against plaintiff or to foreclose upon or otherwise accelerate its deed of trust on plaintiff's residence;

24

9.  Damages against Carrollton Bank in an amount to be determined at trial, but no less than $350,000, for its negligence and breach of its duties of care to plaintiff with respect to monitoring and administering its loan to EPA;

10.  Creation of a Constructive Trust in favor of EPA and Petrou for all of EPA's assets improperly diverted to or in the possession of EC that are now held by Carrollton Bank;

11.  Costs and expenses of bringing this suit, including reasonable attorneys' fees;

12.  And such other proper and further relief as the Court may deem appropriate.

**A JURY TRIAL IS DEMANDED**.

Respectfully submitted,

/s/_____
Paul G. Gaston, DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW
Suite 750
Washington, DC 20036
(202) 296-5856
Fax: (202) 296-4154

*Attorney for Plaintiff David M. Petrou*

Dated : February 12, 2007

25