IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID M. PETROU,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CA No. 06-2159 (GK) |
| | )(Next deadline–status report 9/1/07) |
| | ) |
| **CARROLLTON BANK, et al**. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF PETROU'S OPPOSITION TO
CARROLLTON BANK'S MOTION TO DISMISS COUNTS VII AND VIII**

Carrollton Bank's motion to dismiss Count VII of Petrou's Amended Complaint is completely insubstantial and without merit. With respect to Count VII, the Bank argues that Petrou has failed to plead necessary elements of a cause of action for injunctive relief. The Bank then proceeds to recite the four basic elements of a cause of action for injunctive relief, all of which are in fact expressly pleaded by Petrou. Effectively conceding that point, the Bank then argues that these elements are pleaded in a conclusory way, without sufficient supporting factual allegations. However, Petrou's Amended Complaint contains solid factual allegations that support each of the four elements of a cause of action for preliminary injunctive relief, as is further demonstrated below. At bottom, the Bank is confusing the evidentiary requirements for a plaintiff to prevail on a motion for injunctive relief, which plaintiff has not yet made, with the pleading requirements for a plaintiff to state a cause of action for injunctive relief in a Complaint, which plaintiff has amply done.

The Bank introduces its motion by expressing skepticism as to other causes of action plaintiff has stated against it, such as the cause of action for negligence with respect to

monitoring the Bank's loans to Eisner Communications ("EC") and Eisner Petrou & Associates ("EPA"), claiming that Petrou was in a better position as an officer of EPA to monitor the financial health of that company. The Bank ignores the fact that Petrou severed his ties with EPA as of August 2004, when he was cut off from any further active role in the company and his shares of EPA were divested of voting rights. Amended Complaint ¶ 25 (hereinafter "Amended Complaint" is abbreviated as "AC").

The Bank also moves to dismiss Count VIII of plaintiff's Amended Complaint, arguing that various federal and District of Columbia statutes are inapplicable to it. We demonstrate below that several of those statutes are applicable. However, even if the Bank's arguments were right--and they aren't--the Bank's motion to dismiss Count VIII is limited solely to those statutes, and completely ignores other grounds for the Declaratory Judgment that the Bank has no valid or enforceable mortgage on Petrou's residence, and no valid or enforceable personal guaranty. One of those grounds properly pleaded in the Amended Complaint is that the underlying loan to EPA lapsed by its terms, and was never renewed, AC ¶¶ 102-104, a circumstance which ordinarily discharges the guarantor. The motion to dismiss Count VIII must also be denied because there was a failure of consideration with respect to the mortgage the Bank purported to place on Petrou's residence about six weeks after it had already funded the loan to EPA and had already received his personal guaranty.

Relevant Facts

David Petrou is the former Chief Operating Officer of Eisner Petrou & Associates ("EPA"), a Maryland public relations firm with an office in the District of Columbia, which office remained active until August 2004. AC ¶¶ 3-4. EPA was at all relevant times an affiliate

of the much larger advertising agency known as Eisner Communications ("EC"), which operated out of its main office in Baltimore. Id., ¶5.

Carrollton Bank had extended credit to both EPA and EC. The line of credit extended to EPA was approximately $350,000, but the line of credit extended to EC was in excess of $5 million. AC ¶¶ 14, 42.

On or about October 31, 2002, Petrou signed a personal guarantee on the $350,000 line of credit to EPA, but not on the much larger extension of credit to EC. At the same time, Steve Eisner also signed a personal guaranty on the same line of credit to EPA. About a month and a half later, Petrou executed a "Deed of Trust" in the nature of a home equity line purporting to grant the Bank's designated Trustees certain interests in his residence at 2810 R Street, NW, in Washington, DC. AC ¶¶ 15-17.

Petrou severed all ties with EPA on August 30, 2004, when he signed an Operating and Retirement Agreement. Under that Agreement, Steven Eisner and EC were given complete operating control of EPA, and Petrou's shares of EPA were divested of voting rights. EPA was required by the terms of the Agreement to pay down any remaining indebtedness to Carrollton Bank from EPA's revenues and cash flow, defined in a way that required significant debt reduction even in the absence of actual EPA profits. AC ¶¶ 24-27, 29, 30.

EPA did not make the required payments. In fact, it appears that, over the course of over two years, EPA never made a single debt-reduction payment to Carrollton Bank that it was required to make. To the contrary, Petrou has information that revenues and assets of EPA, which remained a healthy, revenue-producing, albeit smaller subsidiary of EC, were improperly diverted to EC to try to stave off EC's eventual collapse. AC ¶¶ 31-35, 41.

On November 10, 2006, the Baltimore community learned, much to its surprise, that EC had collapsed despite all appearances of a thriving business, and despite public proclamations by Steven Eisner of hundreds of millions of dollars in advertising revenues for EC. For unexplained reasons, the Eisners also closed the doors of EPA on the same day. Mr. Eisner is presently under criminal investigation by the U.S. Attorney's office in Baltimore, and a defendant, along with EC, in numerous civil lawsuits by vendors, landlords, and media accounts claiming that EC and Mr. Eisner owe them millions of dollars for unpaid bills. For unexplained reasons, neither EC, nor EPA, nor either of the Eisners has filed for bankruptcy protection.

The Bank has already seized all the available assets of both EPA and EC, and collected collateral from both EPA and EC. AC ¶¶ 43, 44. Some of this collateral is properly attributable to EPA even though it may have been seized from EC. AC, ¶¶ 45, 46. Without a full accounting, and even if the personal guarantee were enforceable, the Bank would benefit from a double recovery against the same underlying $350,000 EPA loan: once from the collateral, and again from Mr. Petrou.

The Bank has no interest in safeguarding Mr. Petrou's rights in this situation. Since the Bank is owed $5 million by EC as well as $350,000 by EPA, and the available funds and collateral seized is far short of that aggregate, the Bank is not interested in sorting out which assets are properly attributable to EPA and which are properly attributable to EC. As far as the Bank is concerned, all assets collected can be applied against the much larger $5 million debt of EC, and none will be applied against the $350,000 loan to EPA. However, sorting out the proper allocation is of keen interest to Mr. Petrou, because if he does owe any amount on his personal guarantee, that amount must be reduced by the recoveries the Bank has already achieved

from EPA and/or from EC (to the extent that the seized assets of EC actually belonged to EPA).

## ARGUMENT

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson,* 355 U.S. 41, 47(1957)).

It is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz v. Sonoma N.A.,* 534 U.S. 506, 511-14 (2002), or to "plead law or match facts to every element of a legal theory." *Krieger v. Fadely,* 211 F.3d 134, 136 (D.C. Cir. 2000).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. District of Columbia,* 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park,* 348 F.3d at 1040.

In resolving a motion to dismiss based on Rule 12(b)(6), the Court must treat the complaint's factual allegations - including mixed questions of law and fact - as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States,* 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Development v. Ashcroft,* 333 F.3d 156, 165 (D.C. Cir. 2003).

I. **PLAINTIFF PROPERLY STATES ALL ELEMENTS OF A CAUSE OF ACTION FOR INJUNCTIVE RELIEF, AND CARROLLTON BANK'S MOTION TO DISMISS COUNT VII SHOULD BE DENIED.**

Count VII of Petrou's Amended Complaint states a cause of action for injunctive relief,

seeking to prevent the Bank from foreclosing on his residence prior to providing an accounting of what collateral it has already collected that is properly attributable to EPA. AC ¶¶ 91-93.[1] The rationale for the relief requested is that Petrou should not have to suffer the irreparable harm of losing his residence, only to find out later, after a proper accounting, that some or all of any obligation he owed to the Bank on his personal guaranty was already satisfied from collateral seized by the Bank.

Carrollton Bank asks the Court to dismiss this cause of action because, in its view, the "Plaintiff has merely alleged conclusions without any specific facts." Bank Motion at 7. However, the Amended Complaint fully satisfies any conceivable pleading requirement for each of the four elements for preliminary injunctive relief, even as enumerated by the Bank. Moreover, each of the four elements is properly supported by reference to specific facts in the Amended Complaint, as is demonstrated below.

1. <u>Likelihood of irreparable Injury</u>.    "Plaintiff would be irreparably harmed if the Bank foreclosed on his personal residence." AC ¶ 92. The Bank does not even argue, much less show by reference to precedent or other authority, that loss of one's home does not qualify as "irreparable harm." There is in fact controlling authority in this Court that the threat of foreclosure is sufficient "irreparable harm" to support this prong for the grant of injunctive relief. <u>See</u> *Perpetual Bldg. Ltd. Partnership v. District of Columbia*, 618 F. Supp. 603, 616 (D.D.C. 1985)("irreparable harm" requirement for preliminary injunction satisfied by threat of foreclosure on building which was principal asset of plaintiff).

---

[1] Petrou also demands an accounting from EPA and EC, because some assets that may be recorded by the Bank as belonging to EC are in fact properly attributable to EPA. AC ¶¶ 93-94.

2. <u>Likelihood of success on the merits</u>. "Plaintiff has a strong probability of success on the merits of his claims against the Bank....." AC ¶ 95. The crux of plaintiff's cause of action for preliminary injunctive relief is that, until he receives a proper accounting of what assets of EPA have already been seized by the Bank as collateral, and the value of those assets has been deducted from any amounts claimed to be owed on the personal guaranty, the bank should not be allowed to foreclose on his residence. Otherwise, the Bank could recover twice for the same underlying debt–once from the collateral, and once from the personal guaranty. Plaintiff believes he has a strong probability of success on his right to that accounting, because the Bank has no legal right to profit from a double recovery realized from foreclosure of his home in the absence of an accounting of collateral realized.

3. <u>Would the injunctive relief sought harm others</u>? "If the injunctive relief is granted, no party will be harmed. The Bank will retain any lawful rights it may have." AC ¶ 96. If the Bank has lawful rights to proceed against Petrou or Petrou's residence, it will not lose those rights by providing a full accounting of assets of EPA it has already seized, whether directly from EPA or indirectly from EC. In fact, the Bank has not even claimed that it or any other entity would be harmed by such an injunction.

4. <u>Would the public interest be served by the injunction</u>? "The public interest also favors the relief sought because the public interest is served by allowing plaintiff to remain in his home, and no one is served by ejecting plaintiff from his residence in a foreclosure sale." AC ¶ 97. Obviously, plaintiff fully addressed this factor as well in his Amended Complaint. As with the other three, Carrollton Bank does not even make an argument to the contrary–that the public interest would somehow be better served by evicting Petrou from his home in a foreclosure sale,

before it is even known whether Petrou's alleged liability on the guaranty is completely or partially offset by collateral already collected.

Carrollton Bank's only complaint about all these properly pleaded elements of an action for preliminary injunctive relief is that the allegations are "conclusory." As demonstrated above, the allegations are well-fleshed out, based on good factual moorings, and inherently logical and plausible. Under the legal standards outlined supra, at 5, and indeed, under any conceivable legal standard, these allegations clearly withstand a motion to dismiss under Rule 12(b)(6).

II. **CARROLLTON BANK IS SUBJECT TO DC LAW APPLICABLE TO MORTGAGE LENDERS, AND THE TILA EXEMPTION FOR COMMERCIAL TRANSACTIONS DOES NOT COVER A HOME EQUITY LINE OF CREDIT LIMITED BY ITS TERMS TO SECURING A PERSONAL GUARANTY.**

A. Carrollton Bank Omits Crucial Language in Its Quotation of D.C. Code Section 26-1102.

Carrollton Bank argues that the District of Columbia Mortgage Lender and Broker Act does not apply to it, thus excusing its failure to obtain the requisite District of Columbia license to act as a mortgage lender, and to make certain required disclosures under that Act. Bank Motion at 9. The Bank argues that the Act "exempts state banks from the license requirement," and relies on a misleading excerpt from the D.C. Code, Section 26-1102. The relevant language of that section provides in full as follows:

> The provisions of this chapter shall not apply to:
>
> (1) Any bank, trust company, savings bank, savings and loan association, or credit union incorporated or chartered under the laws of the United States, any state or territory of the United States, or the District, and any other financial institution incorporated or chartered under the laws of the District or of the United States, that accepts deposits and is regulated under this title, and subsidiaries and affiliates of such entities which maintain their principal office or a branch office in the District of Columbia and in which the lender, subsidiary, or affiliate is

8

> subject to the general supervision or regulation of, or subject to audit or examination by, a regulatory body or agency of the United States, any state or territory of the United States, or the District;

The underlined portion quoted above was omitted entirely from the Bank's citation and quote. Bank Motion at 9. Carrollton Bank does not maintain either a principal office or a branch office in the District of Columbia. Under the plain meaning of the quoted provision, only the described "entities which maintain their principal office or a branch office in the District of Columbia" are exempt from the provisions of this chapter, and therefore Carrollton Bank is not exempt.

Anticipating that Carrollton Bank will argue in response that the quoted section regarding branch or principal offices applies only to "subsidiaries and affiliates," and not "entities," plaintiff notes the following: First, there is no rational or policy-based reason why only a subsidiary or affiliate of a state-chartered banking institution should be required to have an office in the District of Columbia, and not the institution itself, in order to be exempted from the Act. However, there is a good policy reason for exempting all regulated banking entities that have a branch or principal office in the District–the justified assumption that such entities regularly do business within the District and are therefore more familiar with the District's lending laws, practices, and procedures than those which do not regularly do business in the District. Second, the Bank's anticipated reading of the language is inconsistent with the phrase that follows, which speaks of all three–"lender, subsidiary, or affiliate"–as required to be subject to supervision or regulation by a federal or state regulatory authority, not just the two mentioned in the immediately preceding clause, regarding "subsidiaries or affiliates." Thus, the only rational and consistent way to interpret the language is to read the requirement of having an office in the District of Columbia as being applicable to all three–the lender itself, and its subsidiary or

9

affiliate, if applicable.

Accordingly, Count VIII states a valid cause of action against Carrollton Bank based on its failure to follow licensing and other procedures required under the District of Columbia Mortgage and Lender Broker Act.

    B.    The Home Equity Line of Credit, By Its Express Terms, Secured Only Petrou's Personal Guaranty, and Is Therefore Not Subject to the Commercial Exception of TILA.

Plaintiff properly alleged that the Bank failed to disclose the real APR of the home equity line of credit, and failed to notify Petrou of his rights to rescission. AC ¶¶ 20, 107, 110. The Bank does not dispute these points, and does not dispute that they are violations of the Truth in Lending Act ("TILA"). 15 U.S.C. § 1601 et seq.

Instead, the Bank argues that this transaction is exempt from TILA pursuant to TILA's exemption for "extensions of credit primarily for business, commercial, or agricultural purposes...." 15 U.S.C. § 1603(1). However, the Bank's argument confuses the personal guaranty, which was executed on October 31, 2002, to secure a commercial promissory note made on that date, with the home equity line of credit, which was executed some six weeks later, on December 11, 2002, AC ¶ 17, and which expressly provided that it was given "to secure...performance of a guaranty from grantor to lender, and does not directly secure obligations due lender under the note...." AC ¶ 15. A personal guaranty is a personal obligation of the debtor. By its express terms, the home equity line of credit extended to Petrou some six weeks after the extension of credit for business purposes to EPA on October 31, 2002, was intended to secure performance of his personal obligation under the guaranty, and did "not directly secure obligations due lender" under the commercial promissory note executed by EPA.

None of the cases or other authorities cited by the Bank in its motion to dismiss involves a situation such as this, where the mortgage transaction involved expressly by its terms indicates that it is intended to secure a purely personal obligation–a personal guaranty–and does not "directly secure obligations due lender" under an earlier commercial extension of credit.

Accordingly, the commercial loan exemption to TILA does not apply, and the Bank's Motion To Dismiss Petrou's eighth cause of action must be denied for that reason as well.

### III.  THE BANK IGNORES OTHER GROUNDS SUPPORTING COUNT VIII AS WELL.

A.  The Underlying Loan to EPA By Its Terms Lapsed on October or December 31, 2003, and the Bank's Failure to Renew Discharged Petrou's Personal Guaranty.

An additional basis for the relief sought in Count VIII, properly pleaded by Petrou, is that "Carrollton Bank never renewed its Business Loan Agreement of October 31, 2002, entered into with EPA," AC ¶ 102, and "that Agreement expired by its terms on either October 31, 2003 or December 31, 2003." AC ¶ 103.  Further, "[t]he Bank never renewed its promissory note of the same date, which had a maturity date of October 31, 2003." AC ¶ 104.  These properly pleaded allegations of Petrou's Amended Complaint are not even addressed by the Bank in its Motion To Dismiss.   It is well settled that a personal guaranty is discharged "by an act or omission on the part of the creditor" that "has the effect of increasing the guarantor's risk."  See *Whalen v. Devlin Lumber and Supply Corp.*, 251 Md. 51, 53, 246 A.2d 247, 249 (Ct. App. Md. 1967).  By letting the loan and promissory note lapse, and by not insisting on annual renewals from EPA, the Bank materially increased the risks incurred by Petrou as guarantor, and therefore effectively discharged him from the guaranty.    Accordingly, the Bank's Motion To Dismiss Petrou's eighth cause of action should be denied for this reason as well.

B.    There Is a Failure of Consideration with Respect to
       the Home Equity Line of Credit.

Petrou did not execute the deed of trust purporting to grant the Bank an interest in his residence until <u>six weeks after</u> the Bank had already extended credit to EPA pursuant to the promissory note and personal guaranty. AC ¶¶ 15, 17. At that time, there was no new or additional *quid pro quo*: the Bank had already funded the line of credit, EPA had already received the loan, and Petrou had already signed his personal guaranty. The Bank may have asked for additional security in the form of the mortgage interest on Petrou's residence, and Petrou may have executed the papers as requested, but the Bank did not give either Petrou or EPA any additional extension of credit or provide any change in terms of the credit <u>already</u> extended that could serve as consideration for the property interest it sought in Petrou's residence. <u>See</u> *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558 (11th Cir. 1992)(transfer of interest in land held void for failure of consideration). The Bank's request at that point can be characterized as merely precatory, and unsupported by any consideration. Thus there is a failure of consideration to support the property interest sought to be enforced against Petrou's residence, and the Motion To Dismiss Petrou's Eighth Cause of action must be denied for that reason as well.

## **CONCLUSION**

For the reasons stated, Carrollton Bank's Motion To Dismiss Counts VII and VIII of Petrou's Amended Complaint should be denied in its entirety.

Respectfully submitted,

/s/_____
Paul G. Gaston, DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW, Suite 750
Washington, DC 20036
(202) 296-5856
Fax: (202) 296-4154
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DAVID M. PETROU,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **CA No. 06-2159 (GK)** |
| | ) |
| | ) |
| **CARROLLTON BANK, et al**. | ) |
| | ) |
| Defendants. | ) |

ORDER

Having received and reviewed Defendant Carrollton Bank's Motion To Dismiss Counts VII and VIII of Plaintiff's Amended Complaint, and Plaintiff's Opposition thereto, and any further Reply, and it appearing that defendant Carrollton Bank's motion is not well-founded, it is hereby

ORDERED,

that Defendant Carrollton Bank's Motion To Dismiss Counts VII and VIII is DENIED.

SO ORDERED this __ day of _____, 2007.

_____
United States District Court Judge