IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID M. PETROU, | * | |
| Plaintiff, | * | |
| vs. | * | Case No.: 1:06-CV-02159-GK |
| | | **Status Report Due: 9/1/07** |
| CARROLTON BANK, | * | |
| et al., | | |
| | * | |
| Defendants. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT SARA EISNER'S
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Plaintiff Petrou's Opposition to Sara Eisner's Motion to Dismiss is long on hyperbole and style but woefully short on substance and advances absolutely no relevant facts or legal arguments that would preclude this Court from granting Ms. Eisner's Motion to Dismiss for lack of personal jurisdiction. In fact, beyond setting forth a handful of obviously distinguishable facts, Mr. Petrou does little more than recite a litany of conclusory and speculative allegations about Ms. Eisner's alleged business contacts with the District of Columbia which are clearly insufficient to overcome Ms. Eisner's sworn affirmations.[1]

In a nutshell, Mr. Petrou's claims of general and specific personal jurisdiction are both fatally flawed. In terms of general jurisdiction, Mr. Petrou merely points out that Ms. Eisner engaged in several meetings relating to three clients of Eisner Communications ("EC") in the District of Columbia during the fifteen year period <u>before</u> the events leading to Mr. Petrou's lawsuit. Such historical and intermittent activity does not constitute "a consistent pattern of

---

[1] Under applicable law, Mr. Petrou bears the burden of establishing personal jurisdiction by alleging specific facts, not conclusory allegations. *GTE New Media Services, Inc. v. Ameritech Corp.*, 21 F.Supp.2d 27, 36 (D.D.C. 1998).

regular business activity within the jurisdiction" – especially where the most recent visit that Mr. Petrou can point to occurred six years ago. Moreover, in terms of specific jurisdiction, Mr. Petrou relies on a single email sent by Ms. Eisner to Mr. Petrou's attorney in the District of Columbia – in response to the attorney's inquiry – which does not relate to the subject matter of Mr. Petrou's lawsuit and does not legally constitute "transacting business" from which Mr. Petrou's legal claims arose.

### Plaintiff Cannot Demonstrate General Jurisdiction Over Ms. Eisner

Ms. Eisner submitted sworn testimony stating that she does not and has not regularly engaged in or transacted business in the District of Columbia. Mr. Petrou attempts to debunk that testimony by stating that her contacts have been extensive, sustained and repeated, but Mr. Petrou is only able to specifically point to a few occasions when Ms. Eisner, on behalf of her employer, Eisner Communications, visited the District of Columbia.

The first occasion, involving several meetings in the District of Columbia as part of her attempt to procure the Washington Convention & Visitors' Bureau as a client for Eisner Communications, occurred in 2001 – six years ago, and more than three years before the alleged improper conduct set forth in the Amended Complaint, which allegedly began in late 2004 or 2005. The second occasion, involving her work in procuring and initially servicing the Children's Hospital of Washington, occurred in the mid-1990s. The third occasion, involving her alleged work for the Pharmaceutical Manufacturers Association – which Ms. Eisner denies having taken place – could have only occurred in the late 1980s or early 1990s. Finally, Mr. Petrou alleges that Ms. Eisner came to the District of Columbia for a joint presentation to the Bermuda Tourism Board – a presentation that actually took place in Bermuda in the early 1990s.

At best, Mr. Petrou has succeeded in demonstrating that Ms. Eisner made approximately a dozen trips to the District of Columbia between the late 1980s and 2001 – all of which occurred years before any of the alleged misconduct set forth by Mr. Petrou in his Amended Complaint. The reality is that Mr. Petrou is unable to point to any instances where Ms. Eisner has conducted or engaged in any business in the District of Columbia during the past five or six years.

Under District of Columbia law, such conduct does not qualify as "continuous and systematic" because there is no evidence that Ms. Eisner conducted any business in the District of Columbia in the past five or six years, and therefore there is no evidence that she engaged in "regular" or "continuous" business activity in the District of Columbia. *See FC Investment Group LC v. IFX Markets, Ltd.*, 2007 U.S. Dist. LEXIS 7919 (D.D.C. Feb. 6, 2007) (pointing out that contacts must be "continuous" for a finding of general jurisdiction). *See also Atlanticgas Corp. v. Nisource, Inc.*, 290 F.Supp.2d 34 (D.D.C. 2003) (noting that one business transaction within an eight-month period does not constitute continuous business). Thus, it is plain that Ms. Eisner has not been conducting or engaging in business in the District of Columbia sufficient to set demonstrate general jurisdiction under the relevant District of Columbia law.[2]

**Plaintiff Cannot Demonstrate Specific Jurisdiction Over Ms. Eisner**

Plaintiff's misguided attempt to demonstrate specific jurisdiction over Ms. Eisner is equally flawed. Incredulously, Plaintiff relies on <u>a single email</u>, which Plaintiff concedes was initiated by his own attorney, and which does not state what Plaintiff falsely claims it states, as

---

[2] Mr. Petrou also argues speculatively that Ms. Eisner, by virtue of her marriage to Defendant Steve Eisner, who owned EC, "obviously benefitted from the substantial revenues received from District of Columbia accounts" but fails to provide any case law supporting his dubious suggestion that general jurisdiction can somehow be established where the company for which an employee works obtains revenues from a particular jurisdiction. Of course, any conduct by EC in the District of Columbia which did not involve Ms. Eisner is wholly irrelevant to the issue of obtaining personal jurisdiction over Ms. Eisner, an individual who was employed by EC.

the linchpin for his argument. A simple comparison of the actual language of the email to Plaintiff's allegations and to his allegations in the Amended Complaint and a review of District of Columbia case law demonstrates the sheer absurdity of Plaintiff's arguments.

First, it is important to note that although Plaintiff claims that the email states "that EPA's operations remained separate and distinct from EC's" (Petrou Aff. at ¶ 15), the email, which is attached as Exhibit B to Plaintiff's Opposition Papers, actually states: "No changes have happened that effect our arrangement with EPA at all. This is merely a matter of moving around where people sit in the building and to whom they report. The EPA financial statement remains separate." Nowhere does Ms. Eisner state that EPA's operations "remained separate and distinct from EC's" or words to that effect. Plaintiff simply misrepresents the plain language of the email in an attempt to try to make a more persuasive argument.[3]

Second, although Plaintiff argues that Ms. Eisner's email constitutes "transacting business" within the District of Columbia regarding the subject matter of this litigation, the reality is that Mr. Petrou's lawsuit does not concern – and does not even mention – any issues relating to the location where EPA employees sat in the building or to whom they reported, nor does Mr. Petrou's lawsuit concern or mention the issue of whether EC and EPA maintained separate financial statements. Mr. Petrou's lawsuit is based on allegations that Defendants allegedly failed to make certain payments to Carrollton Bank that were allegedly required pursuant to a written agreement between Mr. Petrou and EPA and instead wrongfully diverted

---

[3] Although irrelevant to the jurisdiction analysis, it is worth noting that Ms. Eisner has submitted sworn testimony that the email was entirely accurate – the financial statements of EPA and EC always remained separate, and no changes were made that she was aware of concerning EPA's relationship with EC except for changes in where employees sat in the office and who they reported to. Mr. Petrou has submitted no evidence to the contrary.

those monies to EC in an attempt to rescue EC from impending economic ruin.

Moreover, although specific jurisdiction does not require a "consistent pattern of regular business activity" like general jurisdiction, it does require that the claim for relief have arisen directly from the specific act of transacting business in the District of Columbia. Ms. Eisner's transmission of a single email to Mr. Petrou's attorney in the District of Columbia does not constitute "transacting business" in the District of Columbia, and even if the Court were to perform a Herculean stretch and find that the email did constitute transacting business, there is no factual basis for finding that Mr. Petrou's claims "arise from" Ms. Eisner's email or any information contained therein.

Finally, even assuming Mr. Petrou's arguments to be factually correct, under applicable case law, the transmission of a single email to the District of Columbia cannot constitute "transacting business" sufficient for the imposition of specific jurisdiction, even if Mr. Petrou's lawsuit could somehow be interpreted to arise from that email. Specifically, in *Gibbons & Co. v. Roskamp Inst.*, this court held that several dozen phone calls and emails from Florida defendant to District of Columbia did not establish that defendant transacted business in the District of Columbia for purposes of establishing specific jurisdiction. *See Gibbons & Co. v. Roskamp Inst.*, U.S. Dist. LEXIS 60762, * 9-10 (D.D.C. Aug. 28, 2006).

Likewise, in *FC Investment Group, LC*, this court held that numerous phone calls by defendant into the District of Columbia were insufficient to constitute "transacting business" for purposes of finding specific jurisdiction. *See FC Investment Group, LC*, 2007 U.S. Dist. LEXIS at * 18-20 (setting forth description of applicable case law finding no specific jurisdiction based on the transmission of email correspondence or phone calls to the District of Columbia). *See*

5

*also Comsat Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 523 (D.D.C. 1995) (finding eleven phone calls and fax transmissions were insufficient to demonstrate specific jurisdiction, even where some communications were initiated by defendant).

## Conclusion

For the reasons set forth herein, and in Ms. Eisner's Motion to Dismiss and Supporting Memorandum of Law, Ms. Eisner requests that the Court grant her motion to dismiss for lack of personal jurisdiction.

Dated: March 23, 2007                     Respectfully Submitted,

                                          _____/s/_____
                                          Leslie D. Hershfield (427135)
                                          Andrew M. Dansicker
                                          Schulman, Treem, Kaminkow,
                                          Gilden & Ravenell, P. A.
                                          The World Trade Center, Suite 1800
                                          401 East Pratt Street
                                          Baltimore, Maryland 21202
                                          Telephone: 410-332-0850
                                          Facsimile: 410-332-0866

                                          *Counsel for Defendant Sara Eisner*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23RD day of March, 2007, a copy of the foregoing Defendant Sara Eisner's Reply Brief in Support of Motion to Dismiss was served electronically to:

Paul G. Gaston, Esq.
Law Offices of Paul G. Gaston
1120 19th Street, NW, Suite 750
Washington, D.C. 20036

Janet L. Eveland, Esq.
Law Offices of Janet L. Eveland, Chartered
10320 Little Patuxent Parkway, Suite 311
Columbia, Maryland 21044

/s/
Andrew M. Dansicker

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID M. PETROU, | * | |
| Plaintiff, | * | |
| vs. | * | Case No.: 1:06-CV-02159-GK |
| CARROLTON BANK, et al., | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**AFFIRMATION OF SARA EISNER IN SUPPORT OF REPLY BRIEF**

I, Sara Eisner, the undersigned, do solemnly swear and affirm that:

1. I am over the age of eighteen and have personal knowledge of the facts stated herein.

2. I am submitting this Affirmation in support of Defendant Sara Eisner's Reply Brief in Support of Motion to Dismiss and to counter several of the incorrect and misleading statements set forth in the Affidavit of David M. Petrou.

3. I have never served as an employee, owner, officer or executive of Eisner Petrou & Associates ("EPA").

4. I never regularly conducted business in the District of Columbia on behalf of Eisner Communications ("EC"), nor have I ever traveled frequently to the District of Columbia, solicited business frequently in the District of Columbia or met with EPA personnel and clients frequently in the District of Columbia.

5. In fact, I have only made a few such business trips to the District of Columbia in the last four or five years, and I only made a relatively small number of such trips on behalf of EC between the late 1980s and 2001 or 2002.

6. Specifically, I did have a few meetings in the District of Columbia in 2001 relating to EC's attempts to procure the Washington Convention and Visitors' Bureau as a client for EC.

7. In addition, I attended several meetings in the District of Columbia in the mid-1990s relating to my attempts to obtain the Children's Hospital of Washington as a client for EC.

8. Likewise, I may have attended one or two meetings in the District of Columbia in the early 1990s relating to EC's efforts to procure the Bermuda Tourism Board as a client for EC, but contrary to Mr. Petrou's statement, the actual presentation to the Bermuda Tourism Board took place in Bermuda, not in the District of Columbia.

9. Finally, Mr. Petrou states that EC and EPA provided services to the Pharmaceutical Manufacturers Association, a trade association based in the District of Columbia, but Mr. Petrou neglects to mention that I played no role in that representation, which occurred in the late 1980s or early 1990s, and I never visited the District of Columbia in relation to the Pharmaceutical Manufacturers Association.

10. As for the single email that Mr. Petrou states concerned the subject matter of this lawsuit, there was nothing that I stated in that email – which was not initiated by me but rather was sent to Mr. Petrou's attorney in response to an inquiry from Mr. Petrou's attorney – that relates to the subject matter of the lawsuit.

11.     The email merely stated two facts – that no changes had occurred concerning the arrangement between EPA and EC, except that some EPA employees had been moved to different locations in the office and told to report to different persons, and that EPA's financial statement remained separate from EC's financial statement. Both of these statements were accurate and true statements and neither statement relates in any way to Mr. Petrou's claims concerning EPA's alleged failure to pay monies to Carrollton Bank.

12.     Mr. Petrou's statement that I "regularly visited the offices of Eisner Sanderson" in the District of Columbia between 1995 and 2004 is also false – in fact, I only visited those offices on a handful of occasions during that ten-year period.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing Affirmation is true and correct.

Executed this 23rd day of March 2007.

_____
Sara Eisner